UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LINDA LAUGHLIN, Individually and for Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>FRESENIUS MEDICAL CARE HOLDINGS, INC. d/b/a/ FRESENIUS MEDICAL CARE NORTH AMERICA, and RENAL CARE GROUP, INC.,<br><br>　　　　　　　　Defendants. | NO. 2:23-CV-0180-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

BEFORE THE COURT is Defendant's Motion to Dismiss Fresenius Medical Care Holdings, Inc. (ECF No. 16). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Defendant's Motion to Dismiss Fresenius Medical Care Holdings, Inc. (ECF No. 16) is GRANTED.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 1

## BACKGROUND

This is a purported class action matter arising out of unpaid overtime under the Washington Minimum Wage Act, RCW 49.46, unpaid wages under the Washington Wage Rebate Act, RCW 59.52, and failure to provide meal breaks under WAC 296-126-092.  ECF No. 1 at 33, ¶ 207, 34, ¶ 220, and 37, ¶ 235.  Named Plaintiff was a registered nurse employed at Renal Care Group, Inc. ("RCG"), a wholly owned subsidiary of Fresenius Medical Care Holdings, Inc. d/b/a/ Fresenius Medical Care North America ("Fresenius") around the Spokane, Washington and Post Falls, Idaho area from November 2016 until April 2023.  *Id*. at 2, ¶ 1, 5, ¶ 24, 8, ¶ 49.  Plaintiff contends that Fresenius incorporated in New York, and maintains its headquarters in Waltham, Massachusetts.  *Id*. at 7, ¶ 42.  Likewise, she asserts that RCG is incorporated in Delaware and maintains its headquarters in Waltham, Massachusetts.  *Id*. at 8, ¶ 45.

In her role as a registered nurse around Spokane and Post Falls, Plaintiff and similarly situated employees provided direct patient care by administering and overseeing dialysis treatments.  *Id*. at 13, ¶ 86.  During her employment with RCG, Plaintiff alleges that she and the class of similarly situated employees were misclassified as independent contractors, and subject to deprivation of earned pay and breaks.  *Id*. at 9, ¶ 55, 2, ¶¶ 4-5.

Specifically, Plaintiff alleges that she was subject to a deduction in pay because RCG and Fresenius required employees to work through their required unpaid thirty-minute meal break and did not calculate that time into the hourly-pay employees received. *Id*. at 3, ¶ 10-12. Additionally, Plaintiff alleges that Defendants paid employees at different rates depending on what kind of shift they worked, paying them more if they worked during the COVID-19 pandemic, or in the "Covid unit." *Id*. at 3-4, ¶¶ 13-16. Plaintiff alleges that paying shift differentials is a violation of the Washington Wage Rebate Act because it deprives employees of the statutorily required overtime rates. *Id*. at 18, ¶ 117. Additionally, Defendants excluded higher COVID pay rate into overtime pay rate calculation. *Id*. ¶ 119. Plaintiff asserts that she and similar situated employees routinely worked in excess of 40 hours per week during the relevant three-year period and did not receive the requisite overtime pay. She alleges that Defendants would not take work conducted during meal breaks into account when determining how many hours an employee worked in a week, and therefore penalize employees pay who worked "less" than 40 hours per week. *Id*. at 19, ¶¶ 127-8.

Plaintiff asserts that she and similar situated employees were jointly employed by Fresenius and RCG, and that both entities were aware of the Washington State laws asserted and proceeded to deny employees' wages earned, overtime earned, and actual 30-minute breaks. *Id*. at 28, ¶¶ 174-6.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 3

Defendant seeks dismissal of Fresenius, arguing that Plaintiff has not met her burden of providing facts that the holding company was a joint employer of Plaintiff, and thus not liable for the claims lodged by Plaintiff. ECF No. 16 at 4. Defendant argues that Plaintiff makes no allegation in her complaint regarding how Fresenius, as a holding company, employed Plaintiff or how it exerts the type of control over and involvement in the daily activity of RCG. *Id*. In support of its Motion to Dismiss, Defendant points out that Plaintiff has not shown that Fresenius has ever "fired or hired any employee, held any trainings, [been] the listed entity on any employee's paystub, prepared any employee's daily task or assignment, promulgated any policies, maintained any employee's records, or prepared any employee's work schedule." *Id*. at 11. Plaintiff filed a response, setting forth the factors used to determine whether an entity may be considered a "joint employer." ECF No. 18.

## DISCUSSION

### I.  Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss for failure to state a claim will be denied if the plaintiff alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While the plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff" the plaintiff cannot rely on "conclusory allegations of law and unwarranted inferences ... to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted). That is, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. When deciding, the Court's review is limited to the complaint, documents incorporated into the complaint by reference, and judicial notice. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

II.   **<u>Dismissal of Defendant Fresenius Medical Care Holdings, Inc.</u>**

Defendant Fresenius moves to be dismissed from this matter because it contends it is not a "joint employer" of Plaintiff and thus cannot be held liable under Plaintiff's unpaid overtime pay and unpaid wages claims. ECF No. 16 at 4.

As a general matter, a parent company and a subsidiary are considered separate entities, and thus a parent company may not be held responsible for the liability created by its subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). The law views these entities as separate unless it can be shown that a

parent company and a subsidiary are "not really separate entities" but rather that a subsidiary is simply an "alter ego" of the parent company, and therefore contact one has with a forum state can be attributed to both. *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001), *overruled on other grounds by* Daimler AG v. Bauman, 571 U.S. 117, 134 (2014). "An alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations." *Id*. (quoting *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir.1980)).

To satisfy the alter ego test, a party must make a prima facia showing that "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Id*. (quoting *American Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir.1996)). The test envisions that the parent company exerts such control that it "dictates every facet of the subsidiary's business." *Id*.

Plaintiff does not explicitly argue that RCG is an alter ego of Fresenius, nor does she provide the requisite facts to suggest such. In her complaint, Plaintiff argues that:

> 59. Fresenius and RCG have shared or common ownership of the facilities and clinics at which Laughlin and the Putative Class Members work.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 6

> 60. Fresenius and RCG have a shared corporate headquarters in Waltham, Massachusetts
>
> 61. Fresenius and RCG have a shared and/or centralized human resource department.
>
> 64. Fresenius and RCG jointly control Laughlin's and the Putative Class Members' patient care work
>
> 70. Virtually every job function is predetermined by Fresenius and RCG, including the tools and equipment used, the schedule of work, and related work duties.
>
> 78. At all relevant times, Fresenius and RCG jointly maintained control, oversight, and direction of Laughlin and the Putative Class Members, including, but not limited to hiring, firing, disciplining, and other employment practices.
>
> 82. In sum, at all relevant times, Fresenius and RCG jointly employed the patient care employees who work in Fresenius's healthcare facilities and clinics through RCG.
>
> 98. Further, Defendants jointly require Laughlin and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and Defendants continuously subject these employees to work interruptions during their unpaid meal periods.

ECF No. 1.

These allegations are not sufficient to satisfy the requirements of the alter ego test in demonstrating that Fresenius is dictating every facet of RCG's daily activity, such that both entities are one in the same. Instead, these allegations make sweeping allegations without any specificity as to *how* Fresenius is involved in the daily activities of RCG.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 7

However, Plaintiff asserts that RCG and Fresenius are actually joint employers of Plaintiff and similarly situated employees, and thus both can be held liable for the damages alleged.

The Washington State Minimum Wage Act, ("MWA"), is patterned on the Fair Labor Standards Act ("FLSA"), and as such, liability for violations of MWA may extend to a "joint employer" even if there is no formal employment relationship. *Becerra v. Expert Janitorial, LLC*, 181 Wash. 2d 186, 189 (2014). The FLSA is expansive in its definition of "to employ," stating that it means "to suffer or permit to work." 29 U.S.C. § 203(g). Regardless of whether an entity is deemed an employer or a joint employer of a worker, it is tasked with the same duties under the FLSA. *Becerra*, 181 Wash. 2d at 196 (citing *Reyes v. Remington Hybrid Seed Co.*, 495 F.3d 403, 408–09 (7th Cir. 2007). So too under the MWA, joint employers each have a requirement to comply with the provision set within. *Id*.

The Ninth Circuit has articulated 13 nonexclusive factors, called the "economic reality" test, under the FLSA to determine the relationship between an employee and an entity for minimum wage statutes. The first five "regulatory factors" are: (1) the nature and degree of control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly, to

hire, fire, or modify the employment conditions of the workers; and (5) preparation of payroll and the payment of wages. *Torres-Lopez v. May*, 111 F.3d 633, 640 (9th Cir. 1997).  The remaining eight are considered the non-regulatory or "common law" factors and consist of: (1) whether the work was a specialty job on the production line; (2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes; (3) whether the "premises and equipment" of the employer are used for the work; (4) whether the employees had a business organization that could or did shift as a unit from one [worksite] to another; (5) whether the work was "piecework" and not work that required initiative, judgment or foresight; (6) whether the employee had an opportunity for profit or loss depending upon [the alleged employee's] managerial skill; (7) whether there was permanence [in] the working relationship and (8) whether "the service rendered is an integral part of the alleged employer's business." *Id*. (internal citations omitted).

In addition to the economic reality test, the Washington State Supreme Court has also used a Ninth Circuit four-factor test consisting of: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Becerra*, 181 Wash. 2d at 195 (quoting *Bonnette v. California Health & Welfare*

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 9

1  *Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), *abrogated on other grounds by*

2  *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985)).

3      No single factor of the test is dispositive, rather whether or not the

4  employee/employer relationship exists depends upon the "the circumstances of the

5  whole activity." *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir.

6  1981) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

7      Defendant cites to the economic reality test. ECF No. 16 at 9-10. Plaintiff

8  cites to both the four *Bonnette* factors and the eight common law factors. ECF No.

9  18 at 11-12. Plaintiff asserts that allegations in her complaint supports all four of

10 the *Bonnette* factors: (1) Fresenius had the power to hire and fire her, (2) Fresenius

11 supervised and controlled her work, (3) Fresenius in conjunction with Renal Care

12 Group controlled the rate of payment, and (4) Fresenius maintained records

13 applicable to her employment. ECF No. 18 at 13, 14, 18, and 20.

14     Plaintiff also argues that factual allegations in her complaint supports the

15 following functional factors: (3) that as an employer, Fresenius's premises and

16 equipment were used, (6) that Plaintiff had an opportunity for profit or loss

17 depending on her skill and (8) whether the services rendered was an integral part of

18 the alleged Fresenius' business. ECF No. 8 at 20.

19     As no individual factor is dispositive, and no minimum number of factors

20 are required, the Court is "free to consider any other factors it deems relevant to its

assessment of the economic realities." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003).

I.    <u>Bonnette</u> Factors

    A. *Fresenius has the power to hire and fire Plaintiff.*

In support of her allegation that Fresenius had the power to hire and fire her, and thus she and the Putative Class were subject to uniform policies, Plaintiff asserts, "[a]t all relevant times, Fresenius and RCG jointly maintained control, oversight, and direction of Laughlin and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices." ECF No. 1 at 12, ¶ 78. Additionally, she argues that "Laughlin's and the Putative Class Members' patient care and dialysis work must strictly adhere to the uniform quality standards put in in place by Fresenius and RCG." *Id*. at 10-11, ¶ 11. She further asserts that Fresenius and RCG jointly possessed the ability to hire and fire Plaintiff, to dictate her schedule, and other conditions of employment. *Id*. ¶¶ 79, 80.

    B. *Fresenius supervised and controlled her work.*

In support of the allegation that Fresenius supervised and controlled her work, Plaintiff offers that "throughout her employment, Fresenius required Laughlin to work and be paid through RCG." ECF No. 1 at 5, ¶ 25. She also asserts that Defendants "jointly" required Plaintiff to be paid hourly and engaged

in the common practice of denying meal breaks and pay for time worked. *Id.* at 6 ¶¶ 34-5. Further, she states that Fresenius "controls" those who work at RCG through RCG and seems to assert that this is accomplished through uniform standards put in place by Fresenius that RCG implements, including standardized training and protocols to ensure consistency. *Id.* at 9-11, ¶¶ 57, 66-72. Finally, Plaintiff argues that Defendants together have the practice of implementing a policy that requires employees to work through their meal break without compensation. *Id.* at 15, ¶ 103.

### C. Fresenius in conjunction with Renal Care Group controlled the rate of Plaintiff's payment.

In support of her allegation that Fresenius jointly controlled the rate of payment, Plaintiff offers that "Fresenius required Plaintiff to work and be paid through RCG," that Defendant jointly controlled the schedule and assignments of employees, and that "Defendants require Laughlin and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their job." ECF No. 1 at 5, ¶ 25, 10, ¶ 63, and 14, ¶ 95.

### D. Fresenius maintained records applicable to her employment.

Finally, Plaintiff argues that Fresenius was her employer because they were responsible for maintaining employee records. Specifically, Plaintiff argues that

Fresenius and RCG share common ownership and management, that Fresenius and RCG share a human resource department, and that Fresenius and RCG have "jointly maintained reemployment records." *Id*. at 10, ¶¶ 58, 61, and 12, ¶ 81.

> II. Plaintiff has not satisfied her burden under Rule 12(b)(6) Regarding the Regulatory Factors

In her discussion of the regulatory factors, Plaintiff does not draw a complete nexus from Fresenius to her employment at RCG. Though based on California Wage law, the Ninth Circuit considered a similar case in which it upheld a district court's finding that McDonalds as a franchisor is not a joint employer with a franchisee because McDonalds USA, LLC "does not retain or exert direct or indirect control over plaintiffs' hiring, firing, wages, hours, or material working conditions," and it does not "suffer or permit plaintiffs to work [or] engage in an actual agency relationship with the franchisee." *Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1028 (9th Cir. 2019). In *Salazar*, a requirement to pay fees to the franchisor, a requirement to meet the franchisor's standards in training and protocols to maintain the franchise, as well as use standardized equipment within the franchise, including an hour tracking system that employees alleged caused them to miss out on overtime pay during meal breaks, was not enough to consider the franchisor as a joint employer. *Id*. The Court ultimately found that McDonald's USA, LLC did not "retain general right of control over day-to-day

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 13

aspects" of the franchise in questions. *Id*. at 1030 (internal citations omitted). "McDonald's involvement in its franchises and with workers at the franchises is central to modern franchising and to the company's ability to maintain brand standards, but does not represent control over wages, hours, or working conditions." *Id*.

Here, Plaintiff does not make her allegations with enough specificity to survive the motion to dismiss standard. While she need not conclusively establish that defendants were her joint employers at the pleading stage, Plaintiff must allege some facts in support of this conclusion. Plaintiff here has presented nothing that the Court can use to draw an inference that as a holding company, Fresenius Medical Care Holdings, Inc. is involved with RCG beyond the status of a parent company such that either can be classified as a "joint employer."

Plaintiff makes the sweeping conclusory allegation that Defendant RCG and Defendant Fresenius work in concert to implement a policy of denying overtime pay, to exert control over her work, to dictate working schedules, and that they jointly hold her employment records. Her tangible examples of the overlap between the two entities; that they share a headquarters in Waltham Massachusetts, that they share a human resources department, that they are jointly owned, and that the jointly implement policies and procedures for the daily operation of providing patients with dialysis treatments are unpersuasive to suggest a joint ownership

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 14

relationship by way of control of daily operations.  Plaintiff offers no concrete allegations as to how this joint enterprise is accomplished, nor how the joint enterprise impacts her ability to receive owed wages and overtime, and the ability to take meal breaks.  She makes accusations that Fresenius is an active part of the RCG operation but offers nothing but conclusory statements that Fresenius retains the ability to hire or fire employees, supervised and controlled her work, made decisions about the rate of payment, or maintained records applicable to her employment.  As such, Plaintiff has not alleged sufficient facts under the regulatory factors to support the idea that Fresenius was a joint employer.

### III.   Common Law Factors

Similarly, Plaintiff's allegations supporting several common law factors also fall short.  Even Plaintiff most successful allegation, that she relied on tools provided by Fresenius to complete her daily work, including dialysis, is still not specific enough because she also asserts that RCG supplied the equipment.  ECF No. 1 at 12, ¶ 77.  Plaintiff's arguments that her successful work efforts were an integral to the success of Fresenius in its business of providing dialysis, and therefore support the sixth common law factor "whether the employee had an opportunity for profit or loss depending on their skill," and the eighth factor "whether the services rendered was an integral part of the alleged employer's business," are conclusory.  ECF No. 1 at 12, ¶¶ 73-4.  Therefore, the common law

factors lend no support to Plaintiff, and the Court cannot find that Fresenius is a joint employer on this record.

### III. Declaration of Bryan Mello

Plaintiff requests the Court strike the declaration of Bryan Mello, ECF No. 17, from the record and not consider it as part of its decision as it is beyond the pleadings. ECF No. 18 at 7. Defendant requests that the Court consider the declaration to rebut the claims made in the complaint and support the fact that Fresenius Medical Care Holdings, Inc., is an entity with no employees. ECF No. 19 at 9. In general, a district court cannot consider material outside the record when reviewing a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). When "matters outside the pleading are presented to and not excluded by the court," the 12(b)(6) motion converts into a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

"There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). The declaration was not included by reference in the complaint. However, the Court is permitted to take judicial notice under Rule 201 of a fact if it is "not subject to reasonable dispute," which means it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed.

R. Evid. 201(b)(1)–(2).

The Court finds that striking the declaration is proper at this stage in the proceeding.  Defendant requests that the Court take judicial notice of the content of the declaration speaks to information that "the plaintiff's complaint necessarily relies on" and the "authenticity . . . is not contested."  *Lee* 250 F.3d at 688.  Plaintiff's complaint did assert she was a joint employee of Fresenius and RCG, but it also acknowledged the relationship of the parent/subsidiary distinction arguing that she was an employee of Fresenius Medical Care Holdings, Inc. through RCG.  ECF No. 1 at 7, ¶ 41.  Further, the declaration adds nothing to Defendant's motion, it is successfully taken by the Court without the added information.  The Court likewise grants leave to reassert the proposition made in Mr. Mello's declaration should it become relevant in the future.

## IV.    <u>Amendment</u>

Taking the allegations in light most favorable to Plaintiff, the Court finds that Plaintiff has not alleged sufficient facts to draw an inference that Fresenius is a joint employer of Plaintiff, and thus Defendant Fresenius' is granted dismissal from this matter.  However, the Court shall freely grant leave to amend when justice so requires.  Fed. R. Civ. P. 15(a)(2).  One purpose of Federal Rule of Civil Procedure 15(a) is "to facilitate decision on the merits, rather than on the pleadings or technicalities."  *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015)

(citation omitted).  Here, the Court grants Plaintiff leave to amend her pleadings to factually clarify her claim that Fresenius is a joint employer, and thus may be held liable for claims of withheld wages, withheld overtime pay, and violation of unpaid meal breaks.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss Fresenius Medical Care Holdings, Inc. (ECF No. 16) is **GRANTED**.

2. The declaration given by Bryan Mello in support of ECF No. 16 (ECF No. 17) is **STRICKEN** with leave to renew.

3. Plaintiff is granted leave to amend her complaint. Plaintiff may file an Amended Complaint with **14-days** of this Order.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED October 26, 2023.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 18