UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LINDA LAUGHLIN, Individually and for Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>     v.<br><br>FRESENIUS MEDICAL CARE HOLDINGS, INC. d/b/a/ FRESENIUS MEDICAL CARE NORTH AMERICA, and RENAL CARE GROUP, INC.,<br><br>                              Defendants. | NO. 2:23-CV-0180-TOR<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM |

BEFORE THE COURT is Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 28). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 28) is DENIED.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ~ 1

**BACKGROUND**

This First Amended Complaint ("FAC") arises from claims of unpaid overtime under the Washington Minimum Wage Act, RCW 49.46, unpaid wages under the Washington Wage Rebate Act, RCW 49.52, and failure to provide meal breaks under WAC 296-126-092. ECF No. 24 at 32, 34, 36 ¶¶ 211, 224, 239. Much of the factual background is similar to that of the original Complaint.

Named Plaintiff was a registered nurse employed at Renal Care Group, Inc. ("RCG"), a wholly owned subsidiary of Fresenius Medical Care Holdings, Inc. d/b/a/ Fresenius Medical Care North America ("Fresenius") around the Spokane, Washington, and Post Falls, Idaho area from November 2016 until April 2023. *Id*. at 2, 7, ¶¶ 2, 46. Per the contents of the FAC, Defendant Fresenius is incorporated in New York, and maintains a headquarters in Massachusetts. *Id*. at 7, ¶ 44. Defendant RCG is incorporated in Delaware and maintains a headquarters in Waltham, Massachusetts. *Id*. ¶ 47.

In her role as a registered nurse around the Inland Northwest, Plaintiff provided direct patient care by administering and overseeing dialysis treatments. *Id*. at 12, ¶ 90. During her employment with RCG, Plaintiff alleges that she and the class of similarly situated employees were misclassified as non-exempt employees, and thereby subjected them to deprivation of earned pay and breaks. *Id*. at 27, ¶ 174.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ~ 2

Specifically, Plaintiff alleges that she was subject to a deduction in pay because RCG and Fresenius required employees to work through their required unpaid thirty-minute meal break and did not calculate that time into the hourly-pay employees received. *Id*. at 2, ¶ 7. Plaintiff also argues Defendants excluded a higher COVID-related pay rate into overtime pay rate calculation. *Id*. at 3, ¶ 13. Plaintiff asserts that she and similar situated employees routinely worked in excess of 40 hours per week during the relevant three-year period and did not receive the requisite overtime pay. *Id*. at 18, ¶ 130.

The crux of Plaintiff's argument is that RCG and Fresenius work closely together in controlling the terms of employment of the class members, and therefore are jointly responsible for violations of overtime payments. *Id*. at 26, ¶ 173. The Court previously granted Defendant Fresenius' Motion to Dismiss, because Plaintiff initially did not develop with enough specificity her claims that Defendants were joint employers. *See* ECF No. 20. Plaintiff amended her complaint, and Defendant Fresenius now renews its Federal Rule of Civil Procedure 12(b)(6) response to Plaintiff's FAC, arguing Plaintiff has not adequately argued that it can be held liable with RCG, the true employer of class members. ECF Nos. 28 at 3, 34 at 6. Plaintiff responded, both reviving her joint employment argument, and added an argument that Fresenius is an alter ego of RCG and can thus be held liable for the subsidiary's actions. ECF No. 32 at 8, 11.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ~ 3

**DISCUSSION**

**I.    <u>Personal Jurisdiction</u>**

Defendant argues that the FAC still does not allege facts with enough particularity to allow the Court to draw an inference that it can be held liable for the alleged violations of unpaid overtime and wages.  ECF No. 28 at 11.  It contends that, because it is a holdings company utilizing "Fresenius" as a trade name, liability cannot be attributed to it as an employer because it is neither registered in Washington State nor does it have employees.  ECF No. 34 at 5–6. Plaintiff argues that Defendant Fresenius exerted a type of control over the everyday operations of its subsidiary to be considered an "alter-ego."  ECF No. 32 at 8.

As discussed in the Court's previous Order, generally a parent company and a subsidiary are considered separate entities, and thus a parent company may not be held responsible for the liability created by its subsidiaries.  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  The law views these entities as separate unless it can be shown that a parent company and a subsidiary are "not really separate entities" but rather that a subsidiary is simply an "alter ego" of the parent company, and therefore contact one has with a forum state can be attributed to both.  *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001), *overruled on other grounds by Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014).  "An alter ego or agency

relationship is typified by parental control of the subsidiary's internal affairs or daily operations."  *Id*. (quoting *Kramer Motors, Inc. v. British Leyland, Ltd*., 628 F.2d 1175, 1177 (9th Cir. 1980)).

Defendant Fresenius brings a Rule 12(b)(6) motion to dismiss for failure to state a claim, however, given the allegations of exerted control that Plaintiff is alleging, an additional assessment of personal jurisdiction is also appropriate. Neither RCG nor Fresenius are "at home" in Washington State, and Plaintiff does not argue that the Court may still find general jurisdiction based on actions of the Defendants in the forum.  While the defense of lack of personal jurisdiction is waived if not raised upon a defendant's initial answer to a court under Federal Rule of Civil Procedure 12(h), the Court nevertheless walks through the steps of attributing personal jurisdiction to both RCG and Fresenius.  *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106 (9th Cir. 2000), *as amended on denial of reh'g* (Nov. 1, 2000) ("A fundamental tenet of the Federal Rules of Civil Procedure is that certain defenses under Fed. R. Civ. P. 12 must be raised at the first available opportunity or, if they are not, they are forever waived.")

To overcome a motion to dismiss under Rule 12(b)(2), a plaintiff need only "demonstrate facts that if true would support jurisdiction over the defendant." *Doe*, 248 F.3d at 922.  For purposes of a Rule 12(b)(2) motion, the court will

accept the Plaintiff's version of events as true.  *Id*.  Washington's long-arm statute permits the exercise of jurisdiction to the full extent of the Constitution's Due Process clause.  *See* RCW § 4.28.185; *Shute v. Carnival Cruise Lines*, 113 Wash.2d 763, 766–67 (1989), *rev'd on other grounds Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991).  "Under the due process analysis, a defendant may be subject to either general or specific personal jurisdiction." *Easter v. American West Fin*., 381 F.3d 948, 960 (9th Cir. 2004) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Plaintiff alleges specific, rather than general, jurisdiction over both RCG and Fresenius.  ECF No. 24 at 4, ¶ 16.  A court retains general jurisdiction over a foreign corporation if the corporation has connections to the forum state that "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  The alter-ego test is typically applied in instances where the Court may exercise of general jurisdiction.  *See Daimler AG*, 571 U.S. at 134 (analyzing both agency and alter ego tests under general jurisdiction); *Doe*, 248 F.3d at 926; *Ranza v. Nike, Inc*., 793 F.3d 1059, 1071 (9th Cir. 2015); *Williams v. Yamaha Motor Co*., 851 F.3d 1015, 1021 (9th Cir. 2017).  However, the Ninth Circuit has applied it narrowly to situations of specific jurisdiction.  *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd*., 328 F.3d 1122, 1134 (9th Cir. 2003); *Young v. Actions*

*Semiconductor Co.*, 386 F. App'x 623, 627 (9th Cir. 2010) (declining to apply the alter-ego theory due to lack of substantive evidence, rather than as a function of general jurisdiction). *Compare Daimler AG,* 571 U.S. at 134 (analyzing agency theory and alter-ego theory in the context of general personal jurisdiction). The overwhelming amount of precedent analyzes specific jurisdiction as separate from the alter ego test, and the Court likewise does the same.

For purposes of attributing personal jurisdiction to RCG and Fresenius, specific jurisdiction requires a showing that the nonresident defendant purposely directed activities at residents in the forum state, and that the cause of action arises out of or is related to the defendant's forum contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–73 (1985). Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011). The Ninth Circuit has developed a three-part test to determine whether district courts have specific personal jurisdiction over defendants:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ~ 7

*Harris Rutsky & Co. Ins. Servs*., 328 F.3d at 1129 (citations omitted).

Directing conduct toward a forum state occurs when a defendant takes actions that are intended to have an effect within a state. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 803 (9th Cir. 2004). Purposeful direction happens when a defendant: "(1) commit[s] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Financial Co*., 873 F.3d 1136, 1142 (9th Cir. 2017).

Drawing a reasonable inference, it seems likely that RCG, as a Delaware corporation with a principal place of business in Massachusetts, doing business in Washington State, established the minimum contacts required for specific personal jurisdiction. RCG purposely availed itself of the forum through its operation around Washington State. ECF No. 24 at 4, ¶ 18. Through its employment of class members in the healthcare space, Plaintiff argues it violated Washington law. *Id*. at 19, ¶ 134. As to the final factor, whether the exercise of jurisdiction is reasonable, RCG has not raised that the Court exercising personal jurisdiction would constitute an "overwhelming and undue burden." *Harris Rutsky & Co. Ins. Servs*., 328 F.3d at 1132. Further, it conducts business both in Washington and Idaho, and thus litigating in Washington would not be an entirely foreign forum. *Id*. (finding that a United Kingdom based corporation was not "overwhelming"

burdened by litigating in California where it had conducted business with its subsidiary present in the state).

Plaintiff also presents evidence that Fresenius purposefully availed itself of the forum as it was directing the work of the class members through RCG. Specifically, Plaintiff offers:

54. RCG pays [the putative class members], but Fresenius does everything else.

55. Fresenius hired Laughlin and the Putative Class Members.

56. Laughlin applied for her job on Fresenius's web site.

57. Laughlin was interviewed and hired by a Fresenius employee.

58. Laughlin's offer letter was on Fresenius letterhead.

59. Fresenius trained Laughlin and the Putative Class Members.

60. Laughlin was trained using Fresenius training materials.

61. Fresenius promulgates the policies and procedures Laughlin and Putative Class Members were subject to, including the specific pay policies that are the subject of this lawsuit.

62. Laughlin accessed Fresenius's policies and procedures on a Fresenius intranet.

63. Fresenius sent Laughlin and the Putative Class Members monthly required training materials via email to their Fresenius work email addresses.

64. Fresenius instructed Laughlin and the Putative Class Members to identify themselves as working for Fresenius.

65. Fresenius controlled where Laughlin and the Putative Class

Members worked by assigning them to different hospitals and clinics.

66. Fresenius and RCG jointly control Laughlin's and the Putative Class Members' schedules and assignments.

67. Fresenius controlled Laughlin's and the Putative Class Members' rates and methods of pay.

68. Specifically, Fresenius implemented the automatic meal break pay deduction that applied to Laughlin and the Putative Class Members wages.

69. Fresenius also implemented and controlled the manner and method by which Laughlin and the Putative Class Members' regular rates of pay are calculated for the purpose of determining their overtime wages.

ECF No. 24 at 8–9, ¶¶ 54–69.

Though a much closer call, it seems that based on Plaintiff's assertions, taken as true, Fresenius has also had the requisite minimum contacts requisite to establish specific personal jurisdiction.  Plaintiff's evidence in support of her contention that Fresenius is intentionally directing facets of day-to-day operations at RCG include: Fresenius controlled the process of screening and hiring class members, it provided the training tools and oversaw onboarding, it continued to require provided training of RCG employees, it promulgated the policies of payment at issue here, it maintained class members working schedules and work site assignments, and required class members to identify themselves as Fresenius employees.  Taken as true, the facts as presented allow the Court to draw an inference that RCG employees are a conduit for the actions of Fresenius, including

where they worked, the type of work they performed, and how they categorized themselves.

While the intentional contact Fresenius has with its subsidiary seems easily demonstrated, whether or not Fresenius purposefully availed itself of the forum is more diluted. While these specific facts of contact with the forum are a close call, the Court finds that Plaintiff has alleged that Fresenius' actions were directly aimed at Washington State. In determining whether a defendant "deliberately reached out beyond [its] home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there," a court must look beyond simply "the unilateral activity of another party." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023). In her FAC, Plaintiff states that Fresenius operates more than 4,100 dialysis clinics nationwide and acquired RCG through a merger in 2006. ECF No. 24 at 8 ¶¶ 50, 51. Though Plaintiff argues that Fresenius' policies and procedures themselves violate Washington law, this on its own is not enough to show that Fresenius purposefully aimed contact at or received benefits in contact with the forum. *Burger King Corp.*, 471 U.S. at 478 (finding that the mere existence of a contract with a forum resident not enough to establish jurisdiction). The impact of Fresenius' corporate policies would likely be felt at each location it operates a clinic like RCG, and there are over 4,100 locations where the effects would be noticed if each clinic resided in a state which had a

1   similar set of labor laws to those present in this matter.

2   However, because Plaintiff has alleged that Defendants work hand in glove

3   in their business ventures, and that Fresenius itself has made such contact with the

4   state of Washington as: being the sole owner of RCG as a subsidiary, sending offer

5   letters to class members on Fresenius letterhead, working with RCG on marketing

6   the dialysis services it provides, placing class members at clinics and hospitals

7   within the forum, and requiring them to identify themselves as Fresenius

8   employees, the Court finds that the scale has been tipped in favor of finding

9   personal jurisdiction.

10   As to the second factor, Plaintiff has identified that cause of the alleged

11   violations of Washington State law are attributable to Fresenius' policies, and that

12   RCG works with Fresenius to execute the policies.  ECF No. 24 at 9, 11 ¶¶ 61, 80.

13   Thus, Fresenius' policies are a portion of the "but for" cause of the claims raised.

14   *Yamashita v. LG Chem, Ltd.,* 62 F.4th 496, 504 (9th Cir. 2023).

15   Finally, Fresenius has not contested personal jurisdiction, and it bears the

16   burden of showing the exercise of such jurisdiction is unreasonable given the

17   circumstances.  *CollegeSource, Inc. v. AcademyOne, Inc*., 653 F.3d 1066, 1076

18   (9th Cir. 2011) (citing *Burger King Corp.,* 471 U.S. at 476–78).

19   **II.     Federal Rule of Civil Procedure 12(b)(6) Standard**

20   As previously discussed, Federal Rule of Civil Procedure 12(b)(6) provides

that a defendant may move to dismiss the complaint for "failure to state a claim

upon which relief can be granted." A Rule 12(b)(6) motion will be denied if the

plaintiff alleges "sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the

plaintiff's "allegations of material fact are taken as true and construed in the light

most favorable to the plaintiff" the plaintiff cannot rely on "conclusory allegations

of law and unwarranted inferences ... to defeat a motion to dismiss for failure to

state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996)

(citation and brackets omitted). That is, the plaintiff must provide "more than

labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550

U.S. at 555. Instead, a plaintiff must show "factual content that allows the court to

draw the reasonable inference that the defendant is liable for the alleged

misconduct." *Iqbal*, 556 U.S. 662.

### III.   <u>Joint Employer</u>

As discussed in the Court's Order on the original Complaint, the

Washington State Minimum Wage Act, ("MWA"), is patterned on the Fair Labor

Standards Act ("FLSA"), and as such, liability for violations of MWA may extend

to a "joint employer" even if there is no formal employment relationship. *Becerra*

*v. Expert Janitorial, LLC*, 181 Wash. 2d 186, 189 (2014). The FLSA is expansive

1    in its definition of "to employ," stating that it means "to suffer or permit to work."

2    29 U.S.C. § 203(g); *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722,

3    730 (1947) (finding that that the definition of "employ" in the FLSA cannot be

4    reduced to formal control over the physical performance of another's work).

5    Regardless of whether an entity is deemed an employer or a joint employer of a

6    worker, it is tasked with the same duties under the FLSA.  *Becerra*, 181 Wash. 2d

7    at 196 (*citing Reyes v. Remington Hybrid Seed Co*., 495 F.3d 403, 408–09 (7th Cir.

8    2007).  Under the MWA, joint employers also each have a requirement to comply

9    with the provision set within.  *Id*.

10         Defendant once again asserts that Plaintiff has not argued with enough

11    specificity that it is a joint employer with RCG.  ECF No. 28 at 12.  It points to the

12    Washington State economic reality test outlined in *Becerra v. Expert Janitorial,*

13    *LLC*, which consists of the five regulatory factors:

> (1) the nature and degree of control of the workers; (2) the degree of
> supervision, direct or indirect, of the work; (3) the power to determine
> the pay rates or the methods of payment of the workers; (4) the right,
> directly or indirectly, to hire, fire, or modify the employment conditions
> of the workers; and (5) preparation of payroll and the payment of
> wages.

18    181 Wash. 2d at 196–97 (quoting *Torres-Lopez v. May*, 111 F.3d 633, 639–

19    40 (9th Cir. 1997).

20         The economic reality test also contains eight common law factors:

ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM ~ 14

(1) whether the work was a specialty job on the production line; (2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes; (3) whether the premises and equipment of the employer are used for the work; (4) whether the employees had a business organization that could or did shift as a unit from one worksite to another; (5) whether the work was piecework and not work that required initiative, judgment or foresight; (6) whether the employee had an opportunity for profit or loss depending upon the alleged employee's managerial skill; (7) whether there was permanence in the working relationship; and (8) whether the service rendered is an integral part of the alleged employer's business.

*Id*.

The question of economic reality is based on the circumstances as a whole, and a court is "free to consider any other factors it deems relevant in the assessment of the economic realities." *Becerra*, 181 Wash. 2d at 198 (internal citations omitted) ("[T]hese factors may include whether the putative joint employer knew of the wage and hour violation, whether it pay sufficient amounts to the subcontractors to allow for a lawful wage, and whether the subcontracting agreement is a "'subterfuge or sham.'"").

Plaintiff cites to the *Bonnette v. California. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983) test, which combines four factors with the addition of the common law factors outlined in *Torres-Lopez v. May*, 111 F.3d at 639–40. This test is derived from the Ninth Circuit to determine joint employment under the FLSA. *Becerra*, 181 Wash. 2d 186, 195–96. The four *Bonnette* factors include:

ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ~ 15

[W]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

704 F.2d at 1470.

While the WMA is patterned on the FSLA, the Washington State Supreme Court developed the *Becerra* test to analyze a cause of action under the state law cause of action. 181 Wash. 2d 186, 196–97. The Ninth Circuit uses the *Bonnette* factors to determine whether an employer may be considered joint under the FSLA. 704 F.2d at 1470. While both tests derive from the underlying case, *Torres-Lopez v. May,* and thus have similar features, because Plaintiff alleges state law violations of labor standards, the Court applies the *Becerra* test. 111 F.3d at 639–40.

**A. The nature and degree of control of the workers.**

Defendant asserts that the Court must grant dismissal if the activities of Fresenius do not rise above a "general right to control over the day-to-day" work because it does not control the wages, hours, or working conditions of employees. ECR No. 28 at 14; *Salazar v. McDonald's Corp.* 944 F.3d 1024, 1028 (9th Cir. 2019). The Court agrees. However, unlike her first Complaint, Plaintiff's FAC does allege that Fresenius controlled her work by assigning class members to their respective hospitals and clinics, directing training, dictating employee's schedules

and assignments, and implemented the meal break pay deduction policy as part of this control.  ECF No. 24 at 5, 9 ¶¶ 23, 65, 66, 92.  She alleges that Fresenius required routine training sent to a Fresenius email address.  *Id*. at 9, ¶ 63. According to Plaintiff, class members' employment records were held by a Fresenius controlled human resources department.  *Id*. at 11, ¶¶ 83, 84.  Further, Plaintiff alleges that class members were instructed to identify themselves as Fresenius employees.  *Id*. at 9, ¶ 64.  Taken with the required deference to Plaintiff, the Court finds that the nature and degree of control of the workers factor of the *Becerra* test suggests a joint employer relationship.[1]

---

[1]  Fresenius argues it should be dismissed because it is a holding company without any employees, and therefore could not direct any actions within RCG.  However, at this stage of the proceedings, plausible allegations made by Plaintiff that Fresenius does play an active role in the operation of the RCG are taken as true.  If it is discovered that Defendant Fresenius was not or could not be an active participant in the running of RCG given the structure of ownership, Defendant may make those arguments within a motion for summary judgment.  *Vasquez v. Los Angeles Cnty*., 487 F.3d 1246, 1249 (9th Cir. 2007); *Wilson v. Playtika, Ltd*., 349 F. Supp. 3d 1028, 1044 (W.D. Wash. 2018).

**B.  The degree of supervision, direct or indirect, of the work.**

Defendant contends that Plaintiff offers no information about who oversaw her employment after she was hired, and that the tangible evidence she does offer is irreconcilable with her argument that RCG and Fresenius controlled her employment together.  ECF No. 28 at 14.  Plaintiff cited to the *Bonnette* test in her Response, which combines factor one and two of the *Becerra* test, and as such her arguments lend themselves to a discussion of control and supervision together. ECF No. 32 at 12.  As to support for the type of supervision the Court can glean from Plaintiff's FAC, her allegation that Fresenius required monthly training, dictated schedules, managed the onboarding process, and implemented policies that required employees to work through their 30-minute lunch break lend some support to either direct or indirect supervision of the work performed.  *Id*. at 5, 9 ¶¶ 23, 25, 61, 66.  She also broadly asserts that "[a]t all relevant times, Defendants jointly supervised and controlled Laughlin's and the Putative Class Members' schedules, rate and method pay, work, and other conditions of their employment." *Id*. at 11, ¶ 82.  These arguments are attenuated as there is no suggestion as to where the direction by RCG ends and the direction of Fresenius begins, and therefore this factor weighs neutrally, neither for nor against a showing of joint employment.

//

ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ~ 18

1

2

### C. The power to determine the pay rates or the methods of payment of the workers.

3    Plaintiff's argument surrounding rate and method of payment is not entirely

4    clear, but nevertheless is alleged with enough specificity that the Court may infer

5    the argument that she is attempting to make.  Her FAC simultaneously states that

6    "RCG pays [the Putative Class Members], but Fresenius does everything else" and

7    "Fresenius controlled Laughlin and the Putative Class Members' rate and method

8    of pay."  ECF No. 24 at 8, 9, ¶¶ 54, 67.  Further, she states that "Fresenius also

9    implemented and controlled the manner and method by which Laughlin and the

10    Putative Class Members' regular rates and pay are calculated for the purposes of

11    determining their overtime wages."  *Id*. at 9, ¶ 69.  What the Court infers these

12    allegations to amount to is that Fresenius is essentially "pulling the strings," and

13    RCG simply executes that payment policies that Fresenius directs.  Ultimately, the

14    most persuasive evidence that Fresenius was able to determine how the meal break

15    deduction and "Covid unit" classification applied to the putative class members

16    lends credence to allegation that they controlled the payment violation at issue in

17    this matter.  *Id*. at 9, ¶ 61.  With that inference as a backdrop, the Court finds that

18    Plaintiff has alleged that Fresenius has the power to determine the rate of payment.

19    //

20    //

**D.  The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers.**

Defendant argues that Plaintiff has still not provided enough proof that Fresenius was involved in the hiring process because she cannot name the employee who interviewed her.  ECF No. 28 at 14.  The Court disagrees.  Plaintiff has demonstrated a plausible inference that Fresenius exercised the right to hire class members.  In addition to the allegation that she was interviewed by a Fresenius employee, she also alleges that she applied for her position on the Fresenius website and that she received her offer of employment on Fresenius letterhead.  ECF No. 24 at 4, 5 ¶¶ 21, 22.  Additionally, she presents that Fresenius maintained the ability to modify the conditions of employees by directing their workplace assignments.  *Id*. at 9, ¶ 66.  This factor also weighs in favor of finding joint employment.

**E.  The preparation of payroll and the payment of wages.**

Plaintiff argues that RCG, not Fresenius, "paid" the class members.  ECF No. 24 at 8, ¶ 54.  This factor weighs against a finding of joint employment.

**F.  Common Law Factors**

Plaintiff's Response contends that the Court inappropriately applied the common law factors to the facts of this matter in the original Order granting dismissal because the facts do not align well with the second part of the test.  ECF

No. 32 at 18.  This argument is made in spite of the fact that Plaintiff lodged arguments relating to the common law factors in her initial Response.  *See* ECF No. 18 at 20–22.  In her present response, Plaintiff asks the Court to disregard the common law factors as inapplicable to the matter at hand.  ECF No. 32 at 19. While the exercise of determining whether an employee is jointly employed by two entities is not mechanical, and the factors are not exclusive, the common law factors are nonetheless part of the test.  *Becerra* 181 Wash. 2d at 198; *See also Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981) (quoting *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730 (1947)) ("Whether an employer-employee relationship exists depends 'upon the circumstances of the whole activity[.]'").

Regardless of whether the Plaintiff believes it is necessary, the Court has found evidence presented supports for the common law factors (3) whether the premises and equipment of the employer are used for the work and (8) whether the service rendered is an integral part of the alleged employer's business.  *Torres*, 111 F.3d at 640.  In support of factor three, Plaintiff asserts that she and the class members were trained using Fresenius materials, that class members access the policies and procedures on Fresenius intranet, throughout her job used equipment jointly supplied by Defendants, and used a Fresenius timeclock system to record hours worked.  ECF No. 24 at 5, 13, 14, ¶¶ 23, 24, 98, 101.  In support of the

eighth factor, Plaintiff offers a finer point than her initial Complaint, namely that *Fresenius* as part of its business model implemented the policies and procedures that are at the heart of this matter. *Id*. at 9–10, ¶¶ 61, 68, 69, 76.

Based on the totality of the circumstances, Plaintiff has set forth enough facts to draw an inference that the "economic reality" of the RCG and Fresenius business relationship could be categorized as joint employers, rather than parent and subsidiary. *Becerra*, 181 Wash. 2d at 198. At the motion to dismiss stage, the Court need only find that "factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Iqbal*, 556 U.S. 662. Two of the regulatory factors weigh in favor of finding joint employment, one neutrally, and one against. With the added support of the common law factors, the Court finds that Plaintiff has overcome Defendant's motion to dismiss.

//

//

//

//

//

//

//

ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ~ 22

1    **ACCORDINGLY, IT IS HEREBY ORDERED:**

2        Defendant's Motion Dismiss for Failure to State a Claim (ECF No. 28) is

3    **DENIED**.

4        The District Court Executive is directed to enter this Order and furnish

5    copies to counsel.

6        DATED January 30, 2024.

7


8                        THOMAS O. RICE
                    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20